Allen, J.
 

 The evidence, on the part of the plaintiffs, which was held insufficient to maintain the action, and at the close of which the judge at circuit ordered the complaint to be dismissed, if credited, would have warranted the jury in finding. 1st. That at the time the steamer Ontario with the plaintiffs’ boat in tow left the wharf to make the passage from Jersey city to the wharf of the towing steamer in East river, the weather was clear, without fog, or anything to obstruct the view or interfere with the safe navigation of the river and harbor; and that it was not negligent or imprudent to attempt the passage at that time. 2d. That when the harbor became •enveloped in fog, which arose before the boats reached their destination, rendering the navigation of the river difficult and hazardous, the steamer, with the plaintiffs’ boat in tow, was navigated with great care and caution, her progress being very slow, with repeated signals to warn other vessels of her presence. 3d. That when the defendant’s ferry-boat was heard approaching, the engines of the Ontario were stopped; and when the hull of the ferry-boat came in sight, and the
 
 *181
 
 direction in which she was moving became apparent, they were reversed, and the steamer backed with a view to avoid a collision, and that all was done that could have been done by those in charge of the tow after the danger became apparent to avoid it. 4th. That those in charge of the ferry-boat knew the density of the fog, the difficulties of the navigation, and the necessity of watchfulness and care; and that when within 350 to 400 yards of the tow, they did, or might have seen it, if they had a proper lookout; and that there was then ample time and space to have reversed the engines, got sternway on the boat and avoided a collision. That instead of doing so no effort was made in that direction until almost the very instant at which the boats came in contact, and too late to prevent the injury.
 

 A verdict finding these facts would have been sustained by the testimony, and could not have been set aside as against evidence; and these facts specially found, without other exculpatory facts, would have authorized a general verdict for the plaintiff!, on the ground that the damages sustained by the plaintiffs resulted solely from the negligence and want of care of the agents and servants of the defendant in the management and navigation of its ferry-boat, and without fault on the part of the plaintiffs, or their servants and agents, or those in charge of the steamer having their boat in tow. Tt is not proposed to consider the question, whether the negligence or want of care and skill, on the part of those in charge of the towing steamer contributing to the injury, would defeat the action if the defendant, by its servants and agents, was also guilty of negligence contributing to the injury. The plaintiffs were helpless; they had no duty to perform or power to act, and the question may arise whether, if the injury resulted from the concurrent negligence of the two steamers, the plaintiffs might not, as the innocent sufferers from the concurrent wrongful acts of the two, have an action against the owners of both or either. But assuming, for the purposes of this appeal, as was assumed by the court below, that the acts and omissions of the managers of the towing
 
 *182
 
 steamer were the acts and omissions of the plaintiffs, and that negligence or want of- care and skill on the part of those managing the tow contributing to the injury would defeat the action, the question is whether the wrongful or negligent acts of those in charge of the Ontario contributed to the injury. The claim is that the steamer was navigating the waters of the bay and harbor of Hew York, without the particular lights required by the act of congress for vessels of that character, and employed in the towing of other boats and vessels. She had lights forward and aft, and a red light on the pilot house, and the witnesses stated they were the usual lights for tug-boats, but they did not conform to the acts of congress.
 

 As the lights usually carried by vessels having boats in tow or used for towing boats in the harbor of Hew York, they were notice to the defendant’s master and pilot that the vessel carrying and exhibiting them was used as a tug-boat, and was' liable to have boats in tow; and the fact that- they were not the lights prescribed by law did not excuse the defendant from the exercise of proper care in approaching or passing her. The omission to carry the regulation lights did not place the Ontario and her tow without the pale of the law, or subject them to the perils of being run down recklessly or negligently. The customary and usual signals of the service, especially if generally known and recognized as such, were sufficient to put the managers of other crafts upon their guard. When the question is one of negligence, such signals may, under some circumstances, supply the want of those prescribed by law, or even do better service, as better calculated to give actual notice of the character, course and position of a vessel, than signals less frequently or never used, although established by act of congress as the proper signals in such cases. It would have been a proper question in this case for the jury, whether the lights • carried by the Ontario were not, for all practical purposes, and as they were usually carried by tug-boats, employed in the harbor of Hew York, the equivalent of the legally prescribed signals,
 
 *183
 
 and did not, in fact, give to those in charge of the defendant’s boat actual knowledge of her presence, and the character of the service in which she was engaged, so that they might and should have avoided both the Ontario and the boat of the plaintiff in tow. But aside from the signals actually carried by the Ontario, or the want of those prescribed by law, the evidence uncontradicted and unexplained, warrants the conclusion that the plaintiffs’ boat could have been, and was seen by the master, and pilot on the lookout on the defendant’s boat, at a distance of 850 to 400 yards, and that within that limit the ferry-boat could have been stopped, and the direction of her movement reversed, and the collision avoided.
 

 If the witnesses were credible and spoke the truth, the hull of each of the steamers was visible from the other, at a distance of about 400 yards, and the bow of the plaintiff’s boat was only twenty-five feet, a little more than eight yards astern of the bow of the tug, and there is nothing to show that she was not visible at the same distance from the ferryboat as was the steamer.
 

 If the Ontario had been without signals of any kind, and had negligently, or even recklessly undertaken to navigate the harbor in a dense fog, and under circumstances in which she should have come to anchor, still it was the duty of the master or other person in charge of the ferry-boat, upon discovering her situation, and the danger of a collision, to use all the usual and proper means to avert the danger; and among those means, and which the evidence shows was practicable, and would probably have been successful, was the reversal of the engines, and the giving a retrograde motion to the boat. When the boats came in sight of each other, both were bound to accept the situation, and do what was necessary, and could be done with safety to prevent injury from collision; and if from that time the one did all that could have been done, and the other omitted to do anything, or did not that which prudent and discreet navigators would have done, and which, if done, would have prevented the collision, the latter is legally chargeable with the consequences.
 

 
 *184
 
 The fact that the injured vessel had been imprudently and negligently placed in the situation in which she received damages would not affect the result in such case. It would not be the proximate cause of the injury, nor could it be ■regarded as directly contributory to it. The law looks to the proximate and efficient causes of the injury, rather than those which are ultimate or remote, and the plaintiff’s negligence is no answer to an action unless it conduced directly to the injury, and is of such a character that but for it the injury would not have happened.
 

 If the absence of the proper signal lights, or the attempt to traverse the harbor in a dense fog, did not cause the collision or contribute to it, but the situation of the injured vessel was, notwithstanding these circumstances, seen by and known to the colliding vessel, and the collision could by the exercise of reasonable care and skill on the part of the latter have been avoided, the injured vessel doing all that could
 
 be
 
 done to avert the danger, the consequences must fall upon the vessel by whose acts and neglects the injury was caused. The damages in that ease are attributable solely to the neglect and want of care and skill of the colliding vessel. The question should have been submitted to the jury, as there was evidence tending to show that the collision did not result in whole or in part from the want of proper lights upon the Ontario, or the attempt to cross the harbor in a fog, but solely from the acts and neglects of the defendant’s servants and agents, and without fault on the part of the plaintiffs or the managers of the steamer Ontario.
 
 (Tuff
 
 v. Warman, 5 Com. Bench, N. S., 513.) The principle is recognized, and well established, that although a party is in fault, yet if that fault does not in any way contribute to an injury, the injured party may have an action against a wrong doer, to whose acts the injury is attributable. The fact that the fault consists in the omission of something required by positive law, or the doing of something lawful in itself, but in an improper and negligent manner, does not affect the principle. If an injured vessel is proved to have been sailing at the time of
 
 *185
 
 the injury, without the proper cautionary signals, the presumption may be, under some circumstances, that the collision resulted from the want of them, and devolve it upon the owner to prove the contrary, but when evidence is given tending to prove that the injury resulted solely from other causes, it becomes a question of fact for the jury, and if the presumption is satisfactorily repelled, the plaintiff may recover. (
 
 Waring
 
 v.
 
 Clark,
 
 5 How. U. S., 441;
 
 Baxter
 
 v.
 
 Troy and Boston R. R. Co.,
 
 41 N. Y., 502.) In
 
 Morrison
 
 v.
 
 The General Steam Navigation Co.
 
 (8 Exch., 733), the principle was adjudged, that no change had been effected by the regulations of the admiralty, pursuant to 'statutes 14 and 15 Viet., chap. 79, with respect to the signals to be carried by sea-going vessels, as to the rule of liability for negligence; but that persons in navigating their vessels wore still bound to keep a look-out just as if no regulations had been made, and if it could be clearly made out that a vessel having no light had been run down by another, from carelessness and negligence in not keeping a good look-out, the owner of the injured vessel would have a right to compensation from the wrong-doer. (And see
 
 Trow
 
 v.
 
 Vermont Gen. R. R. Co.,
 
 24 Vt., 487;
 
 The Farragut,
 
 10 Wallace, 334;
 
 Brown
 
 v.
 
 Buffalo and State Line R. R. Co.,
 
 22 N. Y., 191.) This court decided in
 
 Haley
 
 v.
 
 Earle
 
 (30 N. Y., 208), that although the plaintiff was guilty of negligence in not having a man at the helm of his boat, it was a matter of no consequence, unless the absence of a helmsman contributed to the injury, and that the want of a helmsman on the plaintiff’s boat did not excuse the negligence of the defendant, which caused the injury.
 
 “
 
 One person being in fault will not dispense with another using ordinary care for himself.”
 
 (Butterfield
 
 v.
 
 Forrester,
 
 11 East, 58.) The rule of law respecting negligence, as stated in
 
 Davies
 
 v.
 
 Mann
 
 (10 M. & W., 546), which is cited with approval in 18 N. Y., 258, is “ that although there may have been negligence on the part of the plaintiff, yet unless he might by the exercise of ordinary care have avoided the consequences of the defend
 
 *186
 
 ant’s negligence, he is entitled to recover.” (And see
 
 Bridge
 
 v.
 
 Grand Junction R. R. Co.,
 
 3 M. & W., 244.)
 

 The plaintiff, in an action for negligence, must show himself guiltless of any fault or negligence conducing or contributing directly to the injury, but it need not be proven by direct testimony. It is enough if upon the whole case the fact appears to the satisfaction of the jury; negligence is not to be presumed.
 
 (Button
 
 v.
 
 H. R. R. R. Co.,
 
 18 N. Y., 248.) The absence of any fault on the part of the plaintiff may be inferred from the circumstances of the case.
 
 (Johnson
 
 v.
 
 H. R. R. R. Co.,
 
 20 N. Y., 65.) The case should have been submitted to the jury, as requested by the plaintiff, and especially whether the omission to carry the lights on the steam tug or the canal boat contributed to the collision. The judgment should be reversed and a new trial granted, costs to abide event.
 

 All concur except Grover and Peokham, JJ., not voting.
 

 Judgment reversed.