BRIDGET LAMBERT, Administratrix, etc., Respondent, v. THE STATEN ISLAND RAILROAD COMPANY, Appellant.

The anchoring of a vessel in an unsafe and improper place is a negligent act, and if she is run into and injured by another vessel, or if persons in charge of her are injured, and the improper anchorage was a proximate cause of the injury, no action lies against the owner of the colliding vessel.

In the absence however of a statutory or other regulation on the subject the court cannot determine, as a question of law, that a particular place of anchorage is unsafe and improper, but it is a question of fact for the jury.

The anchoring of a sailboat in New York harbor with a light set, on a night not dark, and when a light can be seen for miles, at a place known by those in charge to be in the customary track of a ferry-boat, is not negligence per se.

The regulation of the harbor masters of New York harbor providing that no vessel shall anchor within certain prescribed limits does not apply to small sail or row boats.

So also, the provision of the Revised Statutes (1 R. S., 685, § 12), requiring the master of a vessel at anchor in the night time to cause a light

to be shown in her rigging, at least twenty feet above her deck and from her taffrail, does not apply to a small open undecked sailboat, having no rigging twenty feet above the place where a deck would be, if it had one.

It *seems* that a non-compliance by a vessel at the time of a collision with statutory, or other regulations prescribed by competent authority intended to prevent collision, is *prima facie* evidence of negligence, and it is a reasonable presumption that it was a contributory cause of the disaster.

(Submitted May 25, 1877 ; decided June 5, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department affirming a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover damages for the death of Charles Lambert, plaintiff's intestate, alleged to have been caused by defendant's negligence.

On the evening of September 9th, 1874, said Lambert and one Charles Thompson started on a fishing excursion down New York bay; they were in a small undecked sail-boat; on arriving at a point off the north-westerly point of Governor's Island, from 100 to 250 yards distant from it, they came to anchor, finding they could proceed no further on account of the tide. According to plaintiff's testimony, they had an ordinary signal lantern, which they fastened in front of the mast, the flame of which was a little above the gunwale of the boat; the night was not dark, and a light could be seen for miles. The place where they anchored was, as Lambert and Thompson knew, within the customary route of defendant's ferry-boats, plying between Staten Island and New York; the track of the boats varied, however, from 300 to 500 feet. A short time after the boat came to anchor, one of the defendant's ferry-boats, the *Middletown,* came along, ran into, capsized and sunk the said boat, and Lambert was drowned. Two passengers on board the ferry-boat, testified that they saw the light when about 600 or 700 feet distant. The evidence as to the position of the light, and as to whether it could be seen in time from the ferry-boat, was conflicting. The ferry-boat was running at an unusual rate of speed.

Defendant's counsel moved for a nonsuit, which was denied, and said counsel duly excepted. Said counsel requested the court to charge the jury " that if they find that the said boat was anchored in a place prohibited by the regulations to be used as a place of anchorage, and that its being so anchored contributed to the collision, they must find for the defendant." Also, that if they find that the failure to exhibit a light at least twenty feet above the deck, and from the taffrail, contributed to the collision, they must find for the defendant. The court refused so to charge, and said counsel duly excepted.

Further facts appear in the opinion.

. *James McNamee* and *Julien T. Davies*, for the appellant. The plaintiffs were guilty of contributory negligence in anchoring where they did without giving adequate notice of their location, and in failing to secure their own safety when apprised of impending danger. (*Beck* v. *E. R. Ferry Co.*, 6 Rob., 82; *Brown* v. *N. Y. C. R. R. Co.*, 32 N. Y., 601; *Owen* v. *H. R. R. R. Co.*, 35 id., 516; *The Steamboat Neptune*, Olcott, 493; *Halderman* v. *Beckwith*, 4 McL., 291; *Schenck* v. *Steamboat Tremont*, 1 Bonp, 60; *Wilds* v. *H. R. R. R. Co.*, 24 N. Y., 432; 29 id., 315; *Bernard* v. *R. & S. R. R. Co.*, 1 Abb. Ct. App. Dec., 134; *Haley* v. *Earle*, 30 N. Y., 208; *Baxter* v. *T. & B. R. R. Co.*, 41 id., 506; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y., 250.) The ordinary rules of navigation are binding on fishing vessels everywhere as well as upon other vessels. (*The Schooner Summit*, 2 Curtis, 150; *The Steam Ferry-boat Hudson*, 5 Bene., 208; *The Exchange*, 10 Blatch., 171; *The Steamboat Relief*, Olcott, 106; *The Schooner Marcia Tribou*, 2 Sprague, 17; *Strout* v. *Foster*, 1 How. [U. S.], 89; *The Scioto*, 2 Ware, 366; *The Steamboat New Jersey*, Olcott, 415; *Waring* v. *Clark*, 5 How. [U. S.], 465.) Plaintiffs were bound to place a light on their boat in a position where it could be seen. (*Culbertson* v. *Shaw*, 18 How. [U. S.], 587; *Cushing* v. *Ship John Fraser*, 21 id., 189; *Lenox* v. *Winisimmet Co.*, 1 Sprague, 160; *The Victoria*, 3 W. Rob., 50; *Brainerd* v.

*Steamer Worcester*, Dist. of Conn., Aug., 1856; *The Santa Claus*, 1 Blatch., 370; *The City of N. Y.*, 8 Blatch., 198; *Simpson* v. *Hand*, 6 Whart., 324; *The Leo*, 11 Blatch., 225; *Train* v. *Steamboat North Am.*, 2 N. Y. [L. Obs,], 67; 2 R. S. [5th ed.], 950.) A violation of the port regulations, although plaintiffs were ignorant of them, was negligence that precluded a recovery. (*O'Neil* v. *Sears*, 2 Sprague, 52; *Steamboat So. Belle*, 1 Newberry, 461; *The New Jersey*, Olcott,    ; *Waring* v. *Clark*, 5 How. [U. S.], 441, 415; *The New York* v. *Rea*, 18 id., 223; 21 id., 187; *Fitch* v. *Livingston*, 4 Sandf., 492; *The ship Chancellor*, 4 Bene., 158; *The Pennsylvania*, 19 Wal., 136; *Jetter* v. *N. Y. & H. R. R. Co.*, 2 Keyes, 154; *Beiseigel* v. *N. Y. C. R. R. Co.*, 14 Abb. Pr. [N. S.], 29.)

*William W. Goodrich*, for the respondent. The pilot-house was not the proper place for the look-out. (*St. John* v. *Paine*, 10 How., 557; *Newton* v. *Stebbins*, id., 586; *Ward* v. *The Ogdensburgh*, 5 McL., 622; 1 Newb., 139; *Haney* v. *Balt. Steam Packet Co.*, 23 How., 287; *The Governor*, Abb. Ady., 108.) The steamboat was proceeding at an improper rate of speed. (1 R. S., 685, m. p., § 10; *Ward* v. *The A. Rossiter*, 6 McL., 63; *Newton* v. *Stebbins*, 10 How. [U. S.], 586; *McCready* v. *Goldsmith*, 18 id., 89; *Ward* v. *The Fashion*, 6 McL., 152; *Ward* v. *The M. Dousman*, id., 231; *The No. Indiana*, 3 Blatch., 92.) Plaintiff's intestate used all efforts he could be expected to, to avoid the collision. (*The Genesee Chief.* 12 How. [U. S.], 443; 3 Blatch., 92; *Fashion* v. *Ward*, 6 McL., 152.)

ANDREWS, J. The evidence was sufficient to authorize the submission to the jury of the question of the negligence of the persons in charge of the *Middletown*. There was much conflict in the testimony as to the position of the light on the sail-boat and as to the point whether it could have been seen from the *Middletown* in time to have avoided the collision, and also as to the speed of the ferry-boat. It was

the province of the jury to determine the disputed questions of fact, and to pass upon the credibility of the witnesses. The evidence, on the part of the plaintiff, tended to show that the *Middletown* was proceeding at an unusual rate of speed, and that the light on the sail-boat was seen by persons on the ferry-boat in time, if it had been observed by the lookout on that vessel, to have prevented the disaster. It was the plain duty of the master of the *Middletown* to keep a vigilant lookout from his vessel, and to exercise great caution under the circumstances. The jury have found that there was negligence on the part of the *Middletown*, and with this finding we cannot interfere.

The principal questions in the case arise in respect to contributory negligence of the persons in charge of the sail-boat, and upon exceptions taken by the defendant to the refusal of the judge to charge certain propositions presented by the defendants' counsel bearing upon the point. The negligence of the deceased is claimed to consist, first, in anchoring the sail-boat at the place where she was anchored; second, in omitting to exhibit a proper light, and third, in not making proper efforts to avoid the collision when the danger was apparent. Leaving out of view the regulation of the board of harbor masters in respect to the anchorage of vessels, the question whether the anchoring of the sail-boat at the place where she was anchored, was an improper and negligent act, was one of fact and not of law, and to be determined by the jury upon all the circumstances of the case. The anchoring of a vessel at an unsafe and improper place is a negligent act, *The Marcia Tribon*, (2 Sprague, 17); *The Scioto*, 2 Ware, 366); *Strout* v. *Foster*, (1 How. [U. S.], 89), and if the vessel so anchored is run into and injured by another vessel, and the improper anchorage was a proximate cause of the injury, no action upon the principles of the common law lies to recover compensation. And the same rule prevents a recovery for a personal injury to persons in charge of the anchored vessel resulting from the collision. But in the absence of a statutory or other regulation on the subject,

the court cannot determine, as a question of law, that a particular place of anchorage is unsafe and improper.

In this case it is alleged that it was negligence in those in charge of the sail-boat to anchor at night in the customary path of the ferry-boat. The place of the collision was from 100 to 250 feet off the north-westerly point of Governor's Island, and the Staten Island ferry-boats were accustomed to pass this point on their trips, within a track which varied, as some of the evidence tends to show, from 300 to 500 feet in width, and this was known to Thompson and the deceased. But the ferry-boat had no right to the exclusive use of this part of the channel. The sail-boat could lawfully use it, and anchoring there to await a favorable turn in the tide, with a light set, on a night not dark, and when lights could be seen for miles, was not *per se* negligence.

It is claimed however by the defendant that anchoring in that place was forbidden by the rules and regulations of the harbor masters. These rules provide that no vessel shall be anchored within certain specified limits, and there is some evidence to show, although the fact is very doubtful, that the sail-boat was anchored within the prohibited district.

The defendant requested the court to charge the jury " that if they find that the sail boat was anchored in a place prohibited by the regulations to be used as a place of anchorage, and that its being so anchored contributed to the collision, they must find for the defendant." The court refused to charge as requested, and the defendant excepted. It was decided by the court in *Hoffman* v. *Union Ferry Co.* (47 N. Y., 176), that the mere fact that a vessel injured by a collision in the night time, did not, at the time, carry or exhibit the lights required by the act of Congress, was not conclusive evidence of negligence, and did not preclude a recovery for the injury sustained; and the non-suit granted on the trial was set aside. But a non-compliance by a vessel, at the time of a collision, with statutory or other regulations prescribed by competent authority intended to prevent collisions, is *prima facie* evidence of negligence, " and it is no more than

a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster." (The Pennsylvania, 19 Wal., 136; *Hoffman* v. *Union Ferry Co.*, *supra.* *The Ship Chancellor*, 4 Benedict, 158.)

But the defendant's difficulty on this branch of the case is, that the regulation of the harbor masters, to which we are referred, does not by fair construction, having in view the authority possessed by them under the act *Chap.* 487, *Laws of* 1862, in pursuance of which the regulations purport to have been made, apply to small boats, such as the sail boat in question. The word *vessel* is used in the regulation, and in common parlance, small row boats, or sail boats, are not included in this designation, and a reference to the act of 1862 will show that the powers conferred upon the harbor masters relate to the control of the wharves and piers, and the regulation of vessels engaged in foreign and domestic commerce, and tugs, barges and lighters. We do not intend to define the limit of their powers, but we are of opinion that the word *vessel* in the regulation cannot be construed in its widest signification so as to include the small sail and row boats which throng the harbor of New York. (See *Farmers' Delight* v. *Lawrence*, 5 Wend., 564.) This request, therefore, was properly refused.

The alleged negligence in respect to the omission of the sail boat to show a light, was the subject of much controversy on the trial. The master and crew of the *Middletown* testified that there was no light forward on the sail boat, and that no light was visible until the moment of the collision, and that the light at the time was in the bottom of the boat. Thompson, on the other hand, who was in the sail boat, testified that a lantern was placed forward of the mast, upon one of the seats, and in a position where, as other witnesses, passengers on the *Middletown*, testified, it could be plainly seen from that vessel in time to have prevented this disaster.

The defendant's counsel asked the court to charge the jury, " that if they find that the failure to exhibit a light at least twenty feet above the deck, and from the taffrail, contributed to the collision, they must find for the defendant." The

court refused to charge this proposition, and the defendant excepted. Section 12, title 10, chapter 20, part 1 of the Revised Statutes provides that whenever any vessel navigating that part of the Hudson river north of the battery, or navigating Lake Champlain "shall be at anchor in the night time the master of such vessel shall cause her peak to be lowered, and shall cause a good and sufficient light to be shown in some part of her rigging at least twenty feet above her deck, and from her taffrail, under a penalty of fifty dollars, etc." This provision was by chapter 314 of the Laws of 1829 extended and applied to the harbor and bay of New York. The sail boat did not have a light as provided in this statute, and we think the statute does not apply to a boat of this description. The sail boat was open and undecked, and it had no rigging twenty feet above the deck, or above the point where the deck would have been if it had been constructed with one.

It appears by reference to the other provisions of the title of the Revised Statutes containing the section referred to, that the legislature was dealing with vessels engaged in the business of navigation, and the conditions imposed in section 12 are not such as can usually be complied with by the small sail or row-boats used on rivers and lakes, or in the bay of New York.

The statutes of the United States require that "open boats when at anchor or stationary shall exhibit a bright white light," (U. S. R. S., 822, rule 13,) and there is no other requirement on the subject. If the testimony on the part of the plaintiff was true, this was complied with, and there is no other statute applicable to the case.

The jury have negatived the claim that the persons in the sail boat were negligent in not cutting the anchor rope, and it was for the jury to say whether under the circumstances they did all that could have reasonably been required of them to avoid the collision.

We think there was no error committed on the trial, and that the judgment should be affirmed.

All concur, except RAPALLO, J., absent.

Judgment affirmed.