WILLIAM H. VAN NORDEN AND OTHERS, APPELLANTS. v.
CLINTON ROBINSON, RESPONDENT.

| 45 | 567 |
| 57 | 300 |

*Navigation of an unlicensed steamboat — the explosion of its boiler will be presumed
to have resulted from the failure to have it inspected — its navigation is a
nuisance*

Upon the trial of this action, brought by the plaintiffs to recover damages for
injuries done to their steamboat by the explosion of the boiler of the defendant's
steamboat, both boats being engaged in the towing and coasting trade upon
the Hudson river and vicinity, it appeared that the licence granted to the
defendant's boat had expired seven days before the explosion occurred, and
that the licenses granted to its engineer and captain had also then expired.
The defendant's boat, after being tied to the dock at Albany at about four
o'clock in the afternoon of September 27, 1883, to wait for a tow expected to
arrive the next morning, was left in charge of the engineer until about fifteen
minutes past one on the morning of the next day, when he went to bed leaving
a fire under the boiler and the steam gauge indicating about fifty pounds of
steam. After that time the fireman attended to the fire until about twenty·
minutes before three, when the boiler exploded with terrific violence wrecking
the defendant's boat and seriously injuring that of the plaintiffs.

The referee, after finding that the boiler was in good condition and the engineer
capable and careful, found: "I do not find that this explosion was caused by
the negligence or want of ordinary care and prudence on the part of the
defendant, or any of the employes upon the defendant's boat  *  *  *  but
the same was occasioned by some mysterious cause, not so explained by the
proof in the case that I can find, as a matter of fact, what the immediate cause
was, and I find that the damages resulting to the plaintiffs were not attributa-
ble to the defendant or his servants." He also found that the employment of
the defendant's boat, and the employment of an unlicensed engineer on the
day of the explosion, was in violation of the provisions of the Revised Statutes
of the United States regulating the navigating of such steamboats.

*Held*, that the navigation of the unlicensed steamboat, in direct violation of the
terms of the United States statute, raised a presumption that the injury was
occasioned by the failure to have the boiler inspected by the United States
inspector, which cast upon the defendant the burden of showing that his omis-
sion so to do did not contribute to the explosion, and that the evidence in the
case was not sufficient to rebut the presumption so created.

*Lambert* v. *Staten Island Railroad Company* (70 N. Y., 104); *The P W. and B.
Railroad Company* v. *Kerr* (25 Md., 531); *The Pennsylvania* (19 Wall, 136)
followed.

*It seems*, that to navigate the steamboat by the use of this uninspected boiler was
to maintain a nuisance, and that proof that it was done in violation of an
express statute, dispensed with the necessity of proving any other negligence.
(Per LANDON, J., who collates the cases bearing upon this question.)

APPEAL from a judgment in favor of the defendant, entered in Saratoga county upon the report of a referee.

The plaintiffs, by their complaint, sought to recover damages for injuries done to their steamboat by the explosion of the boiler of the defendant's steamboat. Both steamboats were engaged in the towing and coasting trade, upon the Hudson river and vicinity. The plaintiffs' boat had been duly inspected and licensed, and its officers in charge had been duly licensed, and these licenses were in force at the time of the injury.

The defendant's boat, at the time of the explosion, had no existing license, its former license had expired seven days previously, and had not been renewed. The engineer, who was employed by the defendant in navigating the boat and was acting in that capacity at the time of the explosion, had no existing license, his license having expired some weeks previously. The license of the captain had also expired. About four o'clock in the afternoon of September 27, 1883, the defendant's boat was tied up to the dock in Albany for the night to wait for a tow which was expected the following morning. The plaintiffs' boat soon after was tied up to the same dock, about fifty feet from the defendant's boat. During the evening and until about fifteen minutes past one o'clock in the following morning, the engineer aforesaid was in charge of defendant's boat. He then went to bed. There was then a fire under the boiler of the defendant's boat, and the steam guage indicated about fifty pounds of steam. The fireman attended to the fire after that. About twenty minutes before three, the boiler of the defendant's boat exploded with terrific violence. The explosion wrecked the defendant's boat and seriously injured the plaintiffs' boat. Testimony was given tending to show the condition of the boiler of the defendant's boat and the manner in which it was operated. The referee found the facts as above stated, and found that the boiler was in good condition, the engineer capable and careful, and then found : " I do not find that this explosion was caused by the negligence or want of ordinary care and prudence, on the part of the defendant, or any of the employes upon the defendant's boat,  * * *   but the same was occasioned by some mysterious cause, not so explained by the proof in the case that I can find as a matter of fact, what the immediate cause was. And I find that the damages resulting to the plaintiffs' were

not attributable to the defendant or his servants." Testimony of experts tended to support the finding of the referee, respecting the unexplained cause. The referee found that the employment of the defendant's boat, on the 28th day of September, 1883, was contrary to, and in violation of the provisions of the Revised Statutes of the United States, and particularly of sections 4417, 4418, 4427 and 4499 thereof, and that the employment of the unlicensed engineer to navigate the boat, was in violation of such statutes, and particularly of section 4438 thereof. He also found that one of two safety valves was unlawfully loaded or obstructed. He refused to find that the explosion was caused by the wrongful acts, neglect and mismanagement of the defendant. He refused to find that the act of the defendant in generating and maintaining steam in the boiler, without being licensed, and without having a licensed engineer, were wrongful and unlawful acts, resulting in the injury to plaintiffs' boat.

*J. C. Ormsby*, for the appellants.

*E. L. Fursman*, for the respondent.

LANDON, J.:

The learned referee held that negligence was the gist of the plaintiffs' action, and that although the defendant was guilty of certain negligent acts, such as navigating his steamboat without having had its boiler officially inspected, and also by the employment of an unlicensed engineer, contrary to the provisions of the Revised Statutes of the United States (§§ 4417, 4418, 4426, 4427, 4438, 4499), yet these acts were not the proximate cause of the explosion, but the same was occasioned by some mysterious cause not ascertainable from the evidence, and, therefore, the defendant was not liable.

The complaint was framed so as to recover for the negligent and also for the wrongful act of the defendant in navigating his boat with its uninspected boiler, and by the employment of an unlicensed engineer. If, therefore, irrespective of the question of negligence, the plaintiff was injured because the defendant was engaged in the navigation of his steamboat in violation of the express provisions of the law, and could not have been injured if the defendant had

not violated the law, the plaintiff was entitled to recover. Many cases recognize the principle that where one in violation of the law does an act which, in its consequences, is injurious to another, he is liable, irrespective of negligence. (*Clifford* v. *Dam*, 81 N. Y., 52; *Irvine* v. *Wood*, 51 id., 224; *Congreve* v. *Morgan*, 18 id., 84; *Congreve* v. *Smith*, Id., 79; *Creed* v. *Hartmann*, 29 id., 591; *Dygert* v. *Schenck*, 23 Wend., 446.) These cases rest upon the principle that a party maintaining a nuisance upon his premises is liable to a third party specially injured thereby. The storage of gunpowder, no matter how carefully, in densely populated places is a nuisance, and the party storing it must answer for the damages resulting from an explosion, because there is always danger of an explosion. (*Heeg* v. *Licht*, 80 N. Y., 579.) Such storage is a nuisance at common law. It may be made a nuisance in other places by ordinance. (Penal Code, § 389.) The Penal Code (§ 385) declares a public nuisance to consist, among other things, "in unlawfully doing an act, or omitting to perform a duty, which act or omission in any way renders a considerable number of persons insecure in life or the use of property." The civil remedy is not merged in the criminal. (Code Civil Pro., § 1899.) Poisons sold must be labeled, or the seller is liable to a third person for the consequential injury. (*Thomas* v. *Winchester*, 6 N. Y., 409; *Wohlfahrt* v. *Beckert*, 92 id., 490.) The keeper of a vicious dog or animal, knowing its propensities, is liable for the injury it does. (*Muller* v. *McKesson*, 73 N. Y., 196.) In Massachusetts, steam engines cannot be placed within five hundred feet of a dwelling-house without a license, and the violator of this law is held liable for any damage done to third persons. (*Quinn* v. *Lowell E. L. Corp.*, 140 Mass., 106; *Quinn* v. *Middlesex E. L. Co.*, Id., 109.) So the seller of illuminating oil of less than the statutory requirement of purity, is made respon₋ sible for the damages caused by its explosion. (*Wellington* v. *Downer Ker. Oil Co.*, 104 Mass., 64.) Many acts which would amount to a nuisance are, upon considerations of public good, authorized by statute, such as building railroads and thereby obstructing highways and water-courses. The test of the liability in such cases for consequential injuries is, whether the act was authorized by law. If so, negligence must be proved; otherwise, not. (*Bellinger* v. *The N. Y. Central R. R. Co.*, 23 N. Y., 42;

*Ward* v. *Atlantic and Pacific Telegraph Co.,* 71 id., 81.) One cannot by blasting rocks, however carefully done, throw the frag_ ments upon the land of an adjoining proprietor. (*Hay* v. *Cohoes,* 2 N. Y. 159; *St. Peter* v. *Denison,* 58 id., 416.)

To navigate this steamboat by the use of this uninspected boiler was to maintain a nuisance. The boiler, unless fit for use, was, when used, a dangerous explosive. Its explosion would be as sudden and disastrous as an explosion of gunpowder. The plaintiff and his servants in charge of another boat had no knowledge of its character. A hole in the sidewalk may possibly be seen and avoided; a vicious dog may possibly be kept at bay; unlabeled poisons may excite the suspicion of the prudent; but a boiler explosion comes without warning. It was condemned by the law. In *Wenzlick* v. *McCotter* (87 N. Y., 122) a conductor leading from the eaves of a house and discharging its water upon the sidewalk, where it froze, was said said not to be a nuisance, because not prohibited by ordinance or positive municipal regulation. But the referee has substantially held that navigation by means of this boiler was not a nuisance, because the boiler was a good one and in good condition. But upon what evidence is this held? The explosion rent the boiler into fragments, and thus left it impossible to determine what an official inspection would have disclosed.

The case of *The Pennsylvania* (19 Wall., 137) was the case of a collision at sea between a bark and a steamer in a fog, the bark being injured. The law required it to blow a fog horn, which would indicate that it was in motion, whereas it rang a bell, which indicated that it was at rest. It was contended upon the part of the bark that the course of the steamer was such that the collision was inevitable, whether the horn was blown or the bell rang. But the court held that congress had prescribed the rule, and to go into an inquiry whether the legislature was not in error would be improper; it would be admitting an equivalent for that which the statute had made a positive requirement. If the statute had been obeyed the result might have been different. So here. if this boiler had been inspected, the result might have been different. Why was it not inspected? Was it because of fear of the result? What lawful equivalent can there be for the official inspection?

The error of the learned referee is, as we conceive, in the assump-

tion that the government inspection would have been a mere formality. There may be cases in which this can be seen to be true, but plainly this is not one of them. It is possible that the boiler was safe, though uninspected. But inspection and approval were the legal test. This test was imposed for the security of the defendant and the public. We cannot assume that the boiler would have passed inspection, and without inspection it was the defendant's duty to stop its use, to tie up and put his fire out. Suppose in the Bellinger case (*supra*) the railroad company had obtained no charter, and therefore no legislative authority. Would it have been heard to answer that it might have obtained it; that it was a mere formality? Clearly not. The law admits no substitute or equivalent for the duty it prescribes, to the prejudice of innocent third parties, for whose benefit the law was made.

The referee did not know what an inspection would have disclosed, and after the explosion it was too late to find out. As was said in a recent collision case in the House of Lords (*Stoomvaart, etc.,* v. *Peninsula, etc., Navigation Company,* 5 App. Cases, 909; 34 Moak's Eng., 199): "If the court allows these rules to be departed from, the result will be the very evil the act was intended to prevent." In any event the burden rested upon the defendant to show that the negligence or wrong-doing imputable to him from his disobedience to the law did not contribute to this explosion. Then what occasioned the explosion? The referee says : " A mysterious cause not so explained by the proof that I can find, as a matter of fact, what the immediate cause was." We are thus asked to substitute this mysterious, unknown and unknowable force, for the probable consequences of an established omission of duty. This seems to require faith not justified by law.

It is doubtless true that boilers sometime explode, and the cause cannot be ascertained satisfactorily. But after an explosion the conditions are not usually favorable for ascertaining the cause. Hence the necessity for that periodical examination prescribed by the statute; the existing liabilities to an explosion may thus, as far as is practicable, be ascertained and obviated. The referee's report practically is : Within the limited conditions for investigation now existing, the real cause of this explosion cannot be ascertained. But we do know the defendant avoided, or omitted, submitting to

the government test; it is his fault that we do not have the benefit of that test, and for aught we do know the omission to submit to the examination was followed by the omission to make such repairs as would have prevented the explosion. A mysterious cause is suggested, but we know nothing about it; and how can we intelligently clothe it with an occasion and energy adequate to cause this explosion?

But it is said that negligence is the gist of the action. But is it not as much negligence to use an uninspected boiler as it is to keep a vicious dog unchained (*Muller* v. *McKesson, supra*) or to let animals having a contagious disease go at large? (*Mills* v. *N. Y. and Harlem R. R. Co.*, 2 Robt., 326; affirmed, 41 N. Y., 619.) The defendant cites numerous cases in which it is held that the doing of an act in violation of an ordinance, whereby a third party, without fault upon his part, is injured, is evidence of negligence, but not necessarily negligence. (*Knupfle* v. *Knickerbocker Ice Co.*, 84 N. Y., 488; *Beisegel* v. *N. Y. C. R. R. Co.*, 14 Abb. N. S., 29; *Jetter* v. *N. Y. and H. R. R. Co.*, 2 Keyes, 154; *Massoth* v. *Del. and H. C. Co.*, 64 N. Y., 524; *Briggs* v. *N. Y. C. and H. R. R. R. Co.*, 72 id., 26; *McGrath* v. *N. Y. C. and H. R. R. R. Co*, 63 id., 522.) But in the case of a statute it seems to be negligence. (*Gorton* v. *Erie R. R. Co.*, 45 N. Y., 660; *Renwick* v. *N. Y. C. R. R. Co.*, 36 id., 132; *Cordell* v. *N. Y. C. and H. R. R. R. Co*, 64 id., 535; *Hayes* v. *Michigan Cen. R. R. Co.*, 111 U. S., 228.)

Non-compliance, at the time of a collision between vessels, with statutory regulations prescribed to prevent collisions, is *prima facie* evidence of negligence. (*Lambert* v. *Staten Island R. R. Co.*, 70 N. Y., 104.) Of course, if it can be seen that such non-compliance had nothing to do with the accident it is wholly immaterial. But in the case of a boiler explosion how can this be seen after the explosion? Here we do know that it was unlawful to use this boiler at all for purposes of navigation, and if it had not been used no explosion could have occurred. It would not have been exposed to mysterious causes of explosion.

The case seems to fall also within the principle stated in *Salisbury* v. *Herchenroder* (106 Mass., 458). There the defendant, contrary to a municipal ordinance, hung out a banner sign across the street upon a wire rope attached to his store upon one side of

the street and to a building upon the other side. Due care was used in its construction and fastening. A gale of extraordinary violence, known as the "great gale." blew the sign down, whereby the plaintiff's property was injured. The court said if the sign had been rightfully placed where it was the question would have been presented whether the defendant had used reasonable care in securing it. If he had done so, the injury by the great gale would have been without his fault. But he placed it there illegally, and this illegality contributed with the gale to do the injury. The gale would have been harmless if the defendant had not illegally placed the sign in its way. Here the mysterious cause would have been harmless if the statute had been obeyed, for in such case the boiler would not have been in use.

The judgment should be reversed, a new trial granted, the reference discharged, costs to abide the event.

LEARNED, P. J., concurred.

BOCKES, J.:

I concur for reversal. It is said in *The P. W. and B. R. R. Co.* v. *Kerr* (25 Md., 531), that an observance of the law is regarded as necessary to satisfy the first requirement of ordinary care, and it seems that the omission of the statutory duty, without other proof by way of explanation of the occurrence, raises a presumption that the injury was because of the omission. It is said, in substance, in *The Pennsylvania* (19 Wall, 136), that when one is proceeding in actual violation of a statutory rule, intended as a protection against the cause of injury "it is no more than a reasonable presumption that the fault, if not the sole cause, was, at least a contributory cause of the disaster;" that in such case the burden rests upon the party omitting the statutory requirement " of showing, not merely, that the fault might not have been one of the causes, or that it probably was not, but that it could not have been." I fully concur in this line of reasoning which has, as I conclude, here direct application.

Judgment reversed, new trial granted, referee discharged, costs to abide event.