WARREN D. FISHER, RESPONDENT, *v.* THE VILLAGE OF CAMBRIDGE, APPELLANT.

*Accident upon a bridge — to one driving upon the sidewalk thereof — damages are not recoverable therefor.*

A party who intentionally drives upon the side of a bridge where a walk has been constructed for foot passengers, and is injured in consequence of the bridge giving way, cannot recover the damages resulting to him from the accident.

Neither the acquiescence by the public authorities in the use of the sidewalk on the bridge by vehicles, nor the fact that there is little to distinguish the carriage-way of the bridge from the sidewalk thereof, justify the use of the sidewalk nor will it sustain a claim for damages based upon the accident resulting from such use.

*Jewhurst* v. *Syracuse* (108 N. Y.; 303) distinguished.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of Washington on the 11th day of February, 1889, in favor of the plaintiff, after a trial at the Washington County Circuit before the court and a jury, at which a verdict was rendered in favor of the plaintiff for $4,500.

*D. M. Westfall,* for the appellant.

*Charles M. Davison,* for the respondent.

LEARNED, P. J.:

This is an appeal from a judgment on a verdict in favor of plaintiff and from an order denying a new trial. The action is to recover damages for injury occasioned by breaking through a bridge on which plaintiff drove with a team.

Main street is one of the principal streets in the village. It is crossed or intersected, about at right angles, by a creek or stream eighteen to twenty feet wide. Prior to the incorporation of the village, a highway bridge, having a span of about twenty feet, crossed this stream; a wooden bridge about twenty-eight feet wide. Pedestrians crossed the stream on this bridge. Soon after the passage of the charter defendant constructed on each side of this highway bridge another bridge on nearly the same level, extending from this highway bridge to the center line of the street. Each of these bridges had about the same span with the highway bridge, and each

was about twelve or thirteen feet wide. The highway bridge and these two side bridges thus covered the whole width of the street. There was no very distinct demarkation between them, except that the south bridge was some three inches below the highway bridge. It seems to be conceded that it was not the duty of the defendant to keep in repair the highway bridge, while it was its duty to keep in repair these side bridges. These were in a line with and formed a part of the continuous sidewalks on the sides of the street.

On the south side of the street is the Eldredge store, adjoining the stream on the east, with a platform in front coming about to the south line of the street. In front of the store is a stone-flagged walk five feet wide and about three feet from the platform of the store. Some three feet beyond the walk is a gutter in the earth, which continues along to the stream. The south line of the sidewalk bridge above described, is about in a line with the south line of the flagged walk, and its north line is about in a line with the south line of the gutter, so that the sidewalk bridge is of about the width of the flagged walk, the gutter and the intermediate space of three feet. Where the gutter comes to the bridge, there is what may be called a sluiceway by which the water running in the gutter pours under the sidewalk bridge into the stream below. Eldredge's store is about thirty feet in front. Two hitching posts, about seventeen feet apart, stand between the flagged walk and the gutter. The western is about thirteen feet from the east end of the bridge.

The plaintiff, with a team of horses and a truck wagon, drove from the east, coming upon the sidewalk where an alley adjoining Eldredge's store meets the street. He drove upon the sidewalk in front of Eldredge's store, so that his nigh-horse was south of the flagging, and his team and wagon were parallel with the store. He then put a stove on his wagon and drove west. He continued along the sidewalk, inside of the west hitching post, and thus upon the south sidewalk bridge. As he was going then diagonally, so as to pass from the sidewalk bridge to the middle of the street, the sidewalk bridge gave way ; the hind wheels of the wagon were left on the abutment of the bridge ; the forward wheels went into the creek ; his horses' hind feet went down ; the off-horse having one of his fore feet on the highway bridge. The plaintiff was thus injured.

There is evidence enough to go to the jury on the question of

the defective condition of the bridge, if considered as a bridge intended to support the weight of teams of horses and loaded wagons. It is not shown that the bridge was insufficient for foot passengers. It is proved that plaintiff knew that this sidewalk-bridge was the place where foot passengers crossed and that it was built for them.

The principal question in this case must be whether the plaintiff was justified in driving his team across this sidewalk bridge, and whether the accident was not caused by his own negligence in going where it was improper to go. And, in close connection with this, whether it was negligent for defendant not to build this sidewalk bridge so that it would be strong enough for teams and wagons.

It must be noticed that the evidence shows that even after the plaintiff had driven upon the sidewalk lengthwise in front of Eldredge's store (instead of backing the end of the wagon up to the platform), he might, by backing sufficiently into the alley have gone out between the hitching posts. Of course, it was more convenient to drive right along upon the sidewalk. But no reason is shown why all trouble could not have been avoided in the first place by backing the wagon between the posts up to the platform of the store. Obviously, the difficulty in which plaintiff found himself was owing to the manner in which he had chosen to approach the store; a place with which he was entirely familiar. And after he had loaded his wagon, instead of getting off from the sidewalk at once, he chose to continue to drive thereon for his own convenience.

It is said by the plaintiff that there was very little to distinguish the highway bridge from the sidewalk bridge. Now, if the plaintiff had been driving along the street where wagons belong, and if on coming to the highway bridge he had been deceived as to its boundary, and by driving too far on the south side had gone over on the part called the sidewalk bridge, then there would have been ground for the argument that there was no demarkation between them, and that he had been misled and had mistakenly driven on the sidewalk bridge. But this plaintiff is not in that position. He knew he was on the sidewalk when he was in front of Eldredge's. He knew that the part of the bridge before him was a continuation of that sidewalk. With this knowledge he drove directly forward and upon it. It was of no consequence to him where the exact line

was between the two. It was enough that he knew he was driving upon a bridge evidently intended for foot passengers. Whether he knew where the highway bridge began or did not would be a matter quite immaterial. For he had knowingly driven on the part which was not the highway bridge. Such cases as *Jewhurst* v. *Syracuse* (108 N. Y., 303), cited by plaintiff, are just the reverse of this. There the injured party, intending to go on the proper part of the highway, was misled by appearances and got beyond the true boundaries. It was said that the situation was such as to induce the belief in one, passing along and exercising reasonable care, that he was within the line ; and, therefore, he might recover, although the defective place was beyond the line. No such case is here.

There is evidence that, in many instances, teams driving from the west were fastened to the west hitching post, and that when so fastened the off-wheels of the wagons would be on what is called the south sidewalk bridge and the off-horses generally in the gutter. It is evident, therefore, that in these cases only a part of the weight of the wagon and the weight of one horse only would be on the sidewalk bridge. It appears also that draymen like the plaintiff, driving westward from Eldredge's store, did sometimes take the same course which plaintiff took, driving along the sidewalk and on the sidewalk bridge, and so to the middle of the street. The plaintiff urges that he had seen this done and had done it himself, and that defendant and its officers had acquiesced. Hence he claims that he was justified in the manner he drove, because he was led thus to drive by the appearances. But it was pointed out in *Cusick* v. *Adams* (115 N. Y., 55), that it was not a question of appearances, but a question what duty the defendant owed to the plaintiff. So, also, in *Splittorf* v. *State* (108 N. Y., 206). He certainly was not, and could not have been, misled into a belief that this sidewalk and this sidewalk bridge were places where the authorities designed that teams should drive.

Of course, in cities and villages, teams may temporarily obstruct sidewalks. (*Welsh* v. *Wilson*, 101 N. Y., 254.) This is a necessity. And possibly they may do this in the manner in which plaintiff acted when he drove the side of his team and wagon up by Eldredge's store, instead of backing in. If he had done only this, he would not have been injured. But we are not willing to say that, even in

that act, the person who thus drives does not take the risk of the condition of the sidewalk. It may well be doubted whether municipal authorities are bound to keep sidewalks in such order that teams and wagons can safely drive upon them. In the case last cited the obstruction was caused by skids, not by driving a wagon upon the sidewalk.

The Penal Code, section 652, makes it a misdemeanor, willfully and without authority, to drive "along upon" a sidewalk. The by-laws of defendant establish a penalty for the offense. The learned justice charged that, if plaintiff was willfully driving on the sidewalk, and the injury came from that, the action would be barred. But he charged that the public had been allowed to use the sidewalk in a way that plaintiff might have supposed he had a right to go there. If so, that he would not be willfully violating the statute. We think that was incorrect. "Willfully" is in opposition to "accidentally" or "ignorantly." The plaintiff knew that this was a sidewalk, and he drove thereon intentionally. The fact that he had seen others violate the law could be no excuse.

It is said in *Cordell* v. *New York Central and Hudson River Railroad Company* (64 N. Y., 538) that disobedience of a statute is legal negligence. (See, also, *Hayes* v. *M. C. R. R. Co.*, 111 U. S., 240, and cases cited; *Lambert* v. *Staten Island R. R. Co.*, 70 N. Y., 104; *Salisbury* v. *Herchenroder*, 106 Mass., 458; *Van Norden* v. *Robinson*, 45 Hun, 573.)

We are not willing to assert that the violation of this law and ordinance would be in all cases a bar to a recovery. That may "depend on the purview of the legislature in the particular statute and on the language which they have there employed." (*Atkinson* v. *Newcastle Water-Works Co.*, L. R., 2 Ex. Div., 441.) Yet the law and the ordinance constituted a notice to him that the sidewalk was a place where the defendant did not authorize him to travel. It was a place where, if he drove his team, they did not owe the duty of giving him a safe road. And though others had traveled there, as in the case of *Cusick* v. *Adams*, the duty of the defendant was not thereby enlarged. For the place was plainly and unquestionably a sidewalk. However many times plaintiff had seen other draymen, in going from Eldredge's, violate both the statute and the ordinance, he would not hereby be justified in his violation.

As before remarked, the omission of the defendant to prosecute for violations, or its supposed acquiescence in former acts, could be material only when it misled the plaintiff so that he did not know that the place where he was driving was a sidewalk. And no such mistake was, under the circumstances, possible.

It is evident, also, that the question whether defendant was negligent must depend on similar considerations. The defendant had built a bridge strong enough for foot passengers, but not, as it appeared, strong enough for teams, though teams had been on it before. There had been used in its construction some partly decayed timbers, so that there was evidence for the jury as to the sufficiency of construction. But, obviously, no question could exist on this point unless the plaintiff was in some way authorized to believe that this sidewalk bridge was a place intended for teams; so that the question of defendant's negligence could only be submitted to the jury if it should appear that plaintiff was justified in going upon this sidewalk bridge. It seems apparent from the testimony, also, that the part of the sidewalk bridge which fell was that nearest to the highway bridge where the defective timbers had been used. Inasmuch, however, as the plaintiff came on that part not from the highway bridge, but from the south part of the sidewalk bridge, that fact does not seem to be material on the question of defendant's negligence.

In the view we have taken we have not deemed it necessary to consider objections to evidence, or particular exceptions to the charge.

Judgment and order should be reversed and new trial granted, costs to abide event.

LANDON and MAYHAM, JJ., concurred.

Judgment and order reversed, new trial granted, costs to abide event.