Joseph Lowery, an Infant, by Guardian, etc., Respondent, *v.* The Manhattan Railway Company, Appellant.

Fire fell from a locomotive on defendant's road upon a horse attached to a wagon in the street below, and upon the hand of the driver. The horse became frightened and ran away, the driver attempted to drive him against the curb stone to arrest his progress, the wagon passed over the curb stone, threw the driver out and plaintiff, who was on the sidewalk, was run over and injured. In an action to recover damages for alleged negligence causing the injury, the court charged, in substance, that if the jury believed the coal fell through negligence on the part of the defendant, causing the horse to become unmanageable and run against plaintiff, inflicting the injury, defendant was liable, and refused to charge that if the accident occurred through the driver's error of judgment in endeavoring to obtain control of the horse, plaintiff cannot recover. *Held* no error ; that so long as the injury was chargeable to the original wrongful act of the defendant, it was liable ; that the action of the driver in view of the exigency of the occasion, whether prudent or otherwise, might be considered as a continuation of the original act, and so that act was the proximate, not the remote cause of the injury ; also, that the injury was a natural and probable consequence of defendant's negligence. *Ryan* v. *N. Y. C. R. R. Co.* (35 N. Y. 210), *P. R. R. Co.* v. *Kerr* (62 Penn. St. 353), distinguished.

(Argued April 22, 1885 ; decided May 5, 1885.)

Appeal from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made May 24, 1884, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought to recover damages for personal injuries, alleged to have been caused by plaintiff's negligence.

The material facts are stated in the opinion.

*Hugh L. Cole* for appellant. The cause of the injury complained of was too remote. (*Ryan* v. *N. Y. C. R. R. Co.*, 35 N. Y. 210; *Penn R. R. Co.* v. *Kerr*, 62 Penn. 653; *Marble* v. *City of Worcester*, 70 ·Mass. 395; *City of Rockford* v. *Tripp*, 83 Ill. 247; *Flower* v. *Adam*, 2 Taunt. 314; *Sheldon* v. *Sherman*, 42 N. Y. 487; *Webb* v. *R., W. & O. R. R. Co.*, 49 id. 424; *People* v. *Mayor, etc.*, 5 Lans. 529; *Ruper* v. *Nichols*, 31 Hun, 495; *Munger* v. *Baker*, 65 Barb. 539.) In this connection it was error for the trial justice to refuse the defendant's request to charge the jury, that if they believed the accident occurred through the driver's error of judgment in endeavoring to obtain control of his horse, the plaintiff cannot recover. (*Cuff* v. *Newark & N. Y. R. R. Co.*, 6 Vroom, 18; *D., L. & W. R. R. Co.* v. *Salmon*, 10 id. 308; *Ins. Co.* v. *Tweed*, 7 Wall. [U. S.] 52; *Milwaukee R. R. Co.* v. *Kellogg*, 94 U. S. 475.) Negligence cannot be presumed or inferred, but must be proved. (*Curtis* v. *R. & S. R. R. Co.*, 18 N. Y. 534.) The mere fact of the escape of ashes or cinders from a locomotive raises no presumption of negligence in its use or management, and is not evidence from which the jury may draw an inference of negligence. (Addison on Torts, 303, note 1; *Field* v. *N. Y. C. R. R. Co.*, 32 N. Y. 339; *Fero* v. *B. & S. R. R. Co.*, 22 id. 209; *Collins* v. *N. Y. C. R. R. Co.*, 5 Hun, 504; 71 N. Y. 609; *Sheldon* v. *H. R. R. Co.*, 4 Kern. 224; *Home Ins. Co.* v. *Penn. R. R. Co.*, 11 Hun, 182; *Mc-Caig* v. *Erie Ry. Co.*, 8 id. 599; *Road* v. *Erie Ry. Co.*, 18 Barb. 85; *Vaughan* v. *Taff*, 5 Hurlst. & N. 674.)

*Osborne E. Bright* for respondent. The falling of the coals afforded evidence of negligence. (*Sheldon* v. *H. R. R. R. Co.*, 14 N. Y. 218; *Hinds* v. *Barton*, 25 id. 544; *Field* v. *N. Y. C. R. R. Co.*, 32 id. 339; *Webb* v. *R., W. & O. R. R. Co.*, 49 id. 420.) The damages are not remote. The falling coals rendered the horse unmanageable, and thus were the proximate cause of the injury. The fright of the horse, and his collision with a citizen in the crowded streets of the city were the natural and probable consequence of the negligent act of the de-

fendant. (*Scott* v. *Shepard*, 2 Black, 892; *Lynch* v. *Merdin*, 1 Ad. & El. [N. S.] 29; *Former* v. *Seldmecher*, 13 Rep. 790; *Vangler* v. *Menlove*, 13 Eng. C. L. 613; *Guille* v. *Swan*, 19 Johns. 381; *Thomas* v. *Winchester*, 6 N. Y. 397; *Vandenburg* v. *Truax*, 4 Denio, 464; *Webb* v. *R. R. Co.*, 49 N. Y. 420; *Pollett* v. *Long*, 56 id. 200; *Putnam* v. *Broadway R. R. Co.*, 55 id. 108; *Lynch* v. *Merdin*, 1 Ad. & El. [N. S.] 29; *Illidge* v. *Goodin*, 5 C. & P. 190; *Ryan* v. *N. Y. C. R. R. Co.*, 35 N. Y. 210.)

MILLER, J. The principal question arising upon this appeal relates to the right of the plaintiff to recover for the injuries sustained.

The claim of the defendant is, that the cause of the injury was too remote to authorize a recovery of any damages whatever, and it is urged that the court erred in denying the motion to dismiss the complaint, made by the defendants' counsel on the ground stated, as well as in the charge to the jury, that if they believed " that the coal and ashes fell from the defendant's locomotive, through any negligence on the part of the defendant, its servants or agents, and falling upon the horse, caused him to become unmanageable and run against the plaintiff, inflicting injuries upon him, then the defendant is liable to the plaintiff for his damages, occasioned thereby." The same question was also raised by the defendant's counsel by a request to the judge to charge, that " if the jury believed the accident occurred through the driver's error of judgment in endeavoring to obtain control of his horse, the plaintiff cannot recover," which was refused and an exception duly taken to the decision.

It is urged by the appellant's counsel that where there is an intermediary agent or medium between the primary cause of the injury and the ultimate result, the rule of law to be applied is that, where the original act complained of was not voluntary or intentional, or one of affirmative illegality, or in itself the cause of criminal complaint, but was caused by negligence, the responsibility is limited to the necessary and natural con-

sequences of the act, and that when beyond that, they are or may be modified or shaped by other causes, they are too remote to be the foundation of legal accountability.

The injury sustained by the plaintiff was caused by reason of fire falling from a locomotive of the defendant upon a horse attached to a wagon, in the street below and upon the hand of the driver. The horse became frightened and ran away and the driver attempted to guide his movements and drive him against a post of the elevated railroad so as to stop him. Failing to accomplish this he intentionally turned the horse and attempted to run him against the curbstone to make it heavy for him and so arrest his progress, but the wagon passed over the curbstone instead of being arrested by it and threw the driver out and ran over and injured the plaintiff.

It will be seen that the injury was not caused directly by the defendant, but was produced through the instrumentality of the horse and driver, the latter of whom, it appears, was doing all that lay in his power and exercising his best judgment in attempting to stop the frightened animal and to prevent any further injury, and the question we are called upon to consider here is, whether, in view of the fact that the plaintiff may have been injured by reason of the management of the horse by the driver, in consequence of which it was diverted from the natural course it might otherwise have taken, the defendant is relieved from responsibility for the result of the accident.

It may be assumed that at that time the driver, who was smarting from the effects of the burning coal which had fallen upon his hands, and startled by the suddenness of the accident, may have been somewhat disconcerted by the peril in which he was placed and, therefore, was unable to manage and control the infuriated animal as he might otherwise have done. The law, however, makes allowances for mistakes and for errors of judgment which are likely to happen upon such an emergency. It does not demand the same coolness and self-possession which are required when there is no occasion for alarm or a loss of self-control.

Where a person is traveling upon a train of cars and a collision has taken place or is likely to occur, and he, under the excitement of the moment, jumps from the train and thereby increases his own danger and chances of injury, although the act of attempting to escape is very hazardous and negligent, yet it is an instinctive act which naturally would take place when a person seeks to avoid great peril, and though wrong in itself, that fact does not relieve the company from liability, if its negligent conduct and a sense of impending danger induced the act.

In the case under consideration, the driver was passing along in pursuit of his customary business driving his horse, when suddenly the falling of the fire upon himself and the horse placed him in a position of great danger, and he was justified in attempting to save his own life and protect himself from injury. If he made a mistake in his judgment, the company was not relieved from liability. If he had allowed the horse to continue on in its own way, it is by no means clear that a similar, if not greater injury might not have been inflicted upon some other person than the plaintiff. It is impossible to determine what the result might have been in such a case, and therefore, it is indulging in speculation to say that the driver's act, under the circumstances, was not the best thing that could have been done. In such cases, it is difficult to disconnect the final injury from the primary cause, and say that the damages accruing are not the natural and necessary result of the original wrongful act. The defendant was chargeable with an unlawful act, which inflicted an injury upon the driver and the horse in the first instance, and ultimately caused the injury sustained by the plaintiff. The injury originally inflicted was in the nature of a trespass, and the result which followed was the natural consequence of the act. So long as the injury was chargeable to the original wrongful act of the defendant, it is not apparent, in view of the facts, how it can avoid responsibility. There was no such intervening human agency as would authorize the conclusion that it was the cause of the accident,

and therefore it cannot be said that the damages were too remote.

The company would clearly be liable for any direct injury arising from the falling of the burning coals upon the horse if it had been left to pursue its own course uncontrolled by the driver, and there would seem to be no reason why it would not be equally liable where the driver seeks to control the horse and exercises his best judgment in endeavoring to prevent injury. That he failed to do so for want of strength or by reason of an error of judgment does not prevent the application of the principle which controls in such a case.

It may, we think, be assumed that such an accident might occur in a crowded street where conveyances are constantly passing, and that the driver of the horse, who might possibly be injured by the defendant's unlawful act, would seek to guide the animal, and if possible, prevent unnecessary injury. The action of the driver, in view of the exigency of the occasion, whether prudent or otherwise, may well be considered as a continuation of the original act, which was caused by the negligence of the defendant, and the defendant was liable as much as it would have been if the horse had been permitted to proceed without any control whatever. We think that the damages sustained by the plaintiff were not too remote, and that the wrongful act of the defendant, in allowing the coals to escape from the locomotive, thus causing the horse to become frightened and run, was the proximate cause of the injury, and that the running away of the horse and the collision with the plaintiff were the natural and probable consequences of the negligence of the defendant.

These views are fully sustained by the decisions of the courts. (*Scott* v. *Shepherd,* 2 W. Black. 892 ; *Lynch* v. *Nurdin,* 1 Ad. & El. [N. S.] 29 ; *Former* v. *Geldmecher,* 13 Rep. 790 ; *Vaughn* v. *Menlove,* 32 Eng. C. L. 613 ; *Guille* v. *Swan,* 19 Johns. 381 ; *Thomas* v. *Winchester,* 6 N. Y. 397 ; *Vandenburgh* v. *Truax,* 4 Denio, 464 ; *Webb* v. *R., W. & O. R. R. Co.,* 49 N. Y. 420 ; *Pollett* v. *Long,* 56 id. 200 ; *Putnam* v. *B'd'y, etc., R. R. Co.,* 55 id. 108.) We do not deem it necessary to exam-

ine these cases in detail, and while it may be said that in some of them the injury was caused by the positive, unlawful act of the defendant at the beginning, in others the original act was lawful, while the consequence which followed resulted from the subsequent interference with the plaintiff's rights. In *Guille* v. *Swan* (19 Johns. 381, *supra*), the act of setting up the balloon was lawful in itself, and the injury which followed was the result of its falling on the premises of the plaintiff in a city, and attracting the attention of people outside, and thus causing the damages incurred. In the case at bar the falling of the coals on the horse and driver was caused by the negligence of the defendants' servants, but it was, nevertheless, a direct invasion of the rights of the property and person of the driver and the owner of the horse and wagon, and produced the injury to the plaintiff the same as the falling of the balloon on the plaintiff's premises in the case last cited. We are unable to perceive any distinction between the two cases which would justify the conclusion that the damages to the plaintiff here were more remote than those which were incurred in the case last cited. The principle which is applicable to both cases is the same; it is not apparent that any distinction can be drawn between them which would relieve the defendant from responsibility. It is enough to charge the defendant that it was the author and originator of the wrongful act which produced the injury, and hence it is liable for the same as one of the natural consequences arising from the act itself. It is difficult to conceive any valid ground upon which it can be claimed that the effect of the defendant's negligence was not a probable and the natural consequence following the same.

We are referred to numerous cases cited by the appellant's counsel which, it is claimed, sustain the doctrine contended for by him, and great reliance is placed upon the case of *Ryan* v. *N. Y. C. R. R. Co.* (35 N. Y. 210), which was followed and sustained in *Penn. R. R. Co.* v. *Kerr* (62 Penn. St. 353). In the Ryan case the court defined remote damages to be those which are not an ordinary and natural, not an expected, not a necessary and usual result of the negligent act. It appeared in

that case that the fire was communicated first to the defendant's building from a locomotive on its road, and then over a space of one hundred and thirty feet to the building of the plaintiff, and it was held that the defendant was not liable for the reason that it was not to be anticipated that the fire would be communicated to premises not contiguous. This is far different from a case where a direct injury is inflicted upon a person and property; as in the case at bar it was inflicted in a populous city upon a horse and driver, and caused the horse to become frightened and run away, and it can scarcely be claimed that the consequence which ensued was not the probable and direct cause of the injury sustained.

The two cases last cited were considered and reviewed by FOLGER, J., in *Webb* v. *R., W. & O. R. R. Co.* (49 N. Y. 420, *supra*). In that case the fire was communicated by live coals dropped from the engine and setting fire to a tie on the track, which spreading to an old tie by the side of the track, and from that to some rubbish, and then to the fence along the track, and then to plaintiff's woodland, did the damage complained of, and it was held that the defendant was liable for the injury. It is laid down in the opinion that the Ryan case held that the action in that case could not be sustained for the reason that the damages incurred by the plaintiff were not the immediate but the remote result of the negligence of the defendant, and it was stated that this was not a new rule. FOLGER, J., says in regard to that case, "The pith of the decision is that this was a result which was not necessarily to be anticipated from the fact of the firing of the wood-shed and its contents; that it was not an ordinary, natural and usual result from such a cause; but one dependent upon the degree of heat, the state of the atmosphere, the condition and materials of the adjoining structures and the direction of the wind, which are said to be circumstances accidental and varying. The principle applied was the converse of that enforced in *Vandenburgh* v. *Truax* (4 Denio, 464), which was that the consequence complained of was the natural and direct result of the act of the defendant. This principle is said in the Ryan case not to be

inconsistent with that which controlled the disposition of the latter case, and to be unquestionably sound, but should be applied according to sound judgment in each case as it arises." After referring to the Pennsylvania decision the learned judge concludes that the Ryan case was not controlling in the disposition of the case considered more than the long line of decisions which preceded it.

It will be observed that the Ryan case is clearly distinguishable from the case at bar and can scarcely be held to be applicable to the facts presented here and was not followed in the case last cited, although there was considerable similarity in the leading facts between the two cases. It certainly should not be held to be controlling where there was a positive and unlawful act of the defendant which, as we have seen, induced the accident which was the cause of the plaintiff's injury. Nor have the courts of this State since the decision of *Ryan* v. *N. Y. C.*, etc. (*supra*), held that it established any new or different rule than the one which has long existed and which has been settled by repeated adjudications, as will be seen by the citations already made.

In *Pollett* v. *Long* (56 N. Y. 200) it was held that where an injury to one is caused by and is the natural and probable result of the wrongful act or omission of another, such other is liable therefor although other causes, put in motion by the act or omission, and which in the absence thereof would not have produced the result, contribute to the injury. It appeared in this case that the defendant's dam had given away and carried away a dam of the plaintiff, and by increasing the volume of water tore out the dam of a third party, of whom plaintiff was assignee, and the court charged, in substance, that defendant's negligence must have been the sole cause of the injury or there could be no recovery; that although defendant's dam was defective and out of repair, and in consequence gave way, if there was sufficient water in the middle pond when its dam gave way to materially increase the volume and force of the stream, then plaintiff could not recover for injuries to the lower dam, as the damages would be too remote. This was held error.

GROVER, J., in his opinion, after stating that *Ryan* v. *N. Y. C. R. R. Co.* and *Penn. R. R. Co.* v. *Kerr* (*supra*) were cited in support of the charge, and after discussing the Ryan case, says : " Assuming that this rule was correctly applied in the case of *Ryan* v. *New York Central*, * * * it comes far short of sustaining the proposition under consideration." It will be seen that the Ryan case is clearly distinguishable from the case at bar.

We have carefully examined the other cases in this State which are cited and relied on by the appellant's counsel, and none of them hold that no responsibility exists where the evidence establishes an act of the defendant which was the cause of injury to a third person, although that injury may have been occasioned by the intermediate agency and through the instrumentality of a party who in the first instance was the direct object from which sprang the final result which was the cause of the damages claimed. We think that no such case can be found in the reports. The decisions which are relied upon from other States do not present a state of facts which can be regarded as entirely analogous to the case at bar ; and even if any of them may be considered as leaning in the direction claimed, in view of the fact that the decisions in this State are to the contrary, they are not decisive of the question considered. There was sufficient evidence of the defendant's negligence to submit the case to the consideration of the jury as was done.

There was no error in the charge of the judge, or refusals to charge as requested, or in any ruling on the trial.

The judgment was right and should be affirmed.

All concur, except RAPALLO, J., dissenting, and EARL, J., not voting.

Judgment affirmed.