## McMahon v. Kelly.

(*City Court of Brooklyn, General Term.* April 28, 1890.)

NEGLIGENCE—RUNAWAY HORSES—EVIDENCE.

In an action for injuries to a horse caused by a runaway team of defendant, evidence that defendant's horses were spirited, and at the time of the accident were running loose on a public dock, with their bridles off and feed bags on, and with no driver in control, constitutes a *prima facie* case of negligence which is not satisfactorily explained by evidence showing that defendant's driver had removed the horses' bridles to feed them, and was sitting five feet from them, when a passing boat blew a loud whistle, which caused the horses to run, and that the driver ran after but did not succeed in catching them in time to avoid the collision.

Appeal from trial term.

Action by John McMahon against William Kelly. There was a verdict and judgment for plaintiff, and defendant appeals.

Argued before OSBORNE and VAN WYCK, JJ.

*C. F. Brandt,* for appellant. *M. F. McGoldrick,* for respondent.

OSBORNE, J. This action was brought to recover damages for injuries to one of plaintiff's horses, necessitating its being killed, caused by a runaway team of defendant. It appeared from plaintiff's testimony that on August 23, 1889, a son of plaintiff was at work loading granite blocks on a public pier at the Wallabout basin between the hours of 12 M. and 1 P. M. While so engaged, he heard a shouting from some men on the dock; and, looking up, he saw defendant's team, unattended, coming on a run or gallop from the outer end of the pier, and towards plaintiff's truck and team. The bridles of the defendant's horses were off their heads, and they had on their feed bags. Plaintiff's son testified that he then "ran and tried to save his horses; tried

to shy the running team off his horses." In this he was unsuccessful. A collision ensued, and one of plaintiff's horses was so badly injured that he had to be killed. It was further testified that defendants horses were "pretty good-spirited animals; a spirited team."

At the close of plaintiff's evidence, defendant's counsel moved to dismiss the complaint, which motion was denied; and counsel for defendant excepted. We do not think that this exception was well taken. Here was a spirited team, the property of the defendant, with no driver in control, running loose on a public dock with their bridles off and feed bags on, colliding with plaintiff's team, and causing damage. The bare statement of such a condition of affairs, in our opinion, constitutes a *prima facie* case of negligence on the part of the defendant quite sufficient to put him to his proof to explain why his horses were left to run loose, unbridled and unattended.

The evidence on the part of the defendant showed that his driver had at the noon hour removed the horses' bridles and proceeded to feed them; that he sat on the string-piece of the dock, about five feet away from his team, eating his lunch; that a passing tow-boat blew a loud, shrill whistle, which frightened the horses, and they started to run; that the driver ran after them, to try and catch them, but did not succeed in coming up with them till after the collision. On the evidence, at the close of the testimony, the counsel for the defendant renewed his motion to dismiss the complaint, which motion was denied, and an exception taken thereto. The main contention on this appeal, on the part of the defendant, is that it was error to deny his motion. He claims that the evidence showed that the horses were frightened and caused to run by the blowing of the tow-boat whistle, that that was an act over which he had no control, and that the owner of the tug was the party responsible; citing the cases of *Lowery* v. *Railway Co.*, 99 N. Y. 162, 1 N. E. Rep. 608, and *Pollett* v. *Long*, 56 N. Y. 200, as authorities for his contention. We do not think those authorities applicable to the case before us. In both of those cases the defendants were held liable for the reason that their wrongful act or omission was the moving cause of the injury complained of. Here, conceding that the blowing of the tug's whistle caused the horses to run, that was not of itself a wrongful act. Steam-boats lawfully use their whistles for signaling other vessels as to their course, and for other purposes. It is a well-known and customary practice, and defendant's driver admits he knew of such usage. The question was fairly raised by the evidence as to whether defendant was negligent in the care of his team, notwithstanding the whistle was blown; and that question was, clearly, one for the jury. This question was fairly submitted to the jury by the learned trial judge, in a very lucid charge. At the close of the charge, defendant's counsel further requested the court to charge "that the running away of the horses, and the collision with the plaintiff, provided that the jury find that the horses were frightened by something over which the defendant had no control, does not show negligence or carelessness on the part of the defendant or his servants." To these the court responded: "I so charge the jury. That, by itself, would not constitute negligence. In other words, defendant is not liable because the horses ran away. It must be found that there was negligence on the part of the driver which caused them to run away, or in not preventing them from running away." Here was an epitome of the law on the question of defendant's liability. The jury have found against him, and we think the verdict is a just one.

The exceptions to other refusals of defendant's requests to charge are untenable, and do not, in our opinion, call for any discussion. The judgment and order denying the motion for a new trial should be affirmed, with costs.