PHŒNIX CONSTRUCTION COMPANY, Respondent, *v.* COR-
NELL STEAMBOAT COMPANY, Appellant.   Actions Nos.
1, 2 & 3.

Negligence — temporary obstruction of navigable waters of
Hudson river by contractors engaged in constructing public
improvements — injury to boats and apparatus used therein
caused by collision therewith of tow of canal boats — when
owners of steam tugs, convoying such tow, liable to contractors.

1. Under section 10 of the act of Congress of March 3, 1899, the sec-
retary of war, upon the recommendation of the chief of engineers,
United States army, has authority to permit temporary obstructions
in, or the temporary use of, the navigable channels of the Hudson
river in furtherance of public improvements within the state.

2. Where a construction company had contracted with the board
of water supply of the city of New York to make boring tests in the
bottom of the Hudson river in order to determine at what place an
aqueduct,.or tunnel, should be constructed for the conveyance of
potable waters, from the west side to the east side of the Hudson
river, for the water supply of the city of New York, and such com-
pany had received permission from the war department to drive
piles and anchor boats and platforms in the Hudson river "in con-
nection with making borings," upon conditions which were complied
with, such company was not a wrongdoer, whose boats, platforms
and apparatus constituted unlawful obstructions to the navigation
of the Hudson river.   The company is entitled, therefore, to recover
from a towing company the damages for injuries to, or destruction
of, its boats and other property caused by the collision therewith of
tows of canal boats, where it is shown that the collisions were due to
negligent management on the part of the masters of defendant's
steam tugs, engaged in towing the canal boats.

*Phœnix Construction Co.* v. *Cornell Steamboat Co.*, 146 App.
Div. 950, 951, affirmed.

(Argued November 26, 1913; decided December 30, 1913.)

APPEAL in each of the above-entitled actions from a
judgment of the Appellate Division of the Supreme
Court in the first judicial department, entered Novem-

8

ber 8, 1911, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*J. Parker Kirlin* and *Amos Van Etten* for appellant. The court below erred in failing to hold on the findings that the borings erected by the plaintiff were unlawful obstructions to the navigation of the Hudson river, and that accordingly the plaintiff, as a wrongdoer who had built a nuisance in the navigable channel, could not recover damages for injury to the structure in the absence of a finding of willful fault. (*Montgomery* v. *Portland,* 190 U. S. 89; *Cummings* v. *Chicago,* 188 U. S. 410; *North Shore Boom Co.* v. *Nicomen Boom Co.,* 212 U. S. 406; *Hart* v. *Mayor, etc.,* 9 Wend. 571; *Moore* v. *Commissioners,* 32 How. Pr. 184; *People* v. *Vanderbilt,* 26 N. Y. 287; 28 N. Y. 396; *Blanchard* v. *W. U. Tel. Co.,* 60 N. Y. 510; *Moore* v. *Jackson,* 2 Abb. [N. C.] 211; *Gold* v. *Carter,* 9 Humph. 369; *Garey* v. *Ellis,* 1 Cush. 306.)

*E. Crosby Kindleberger* for respondent. Plaintiff's vessels were properly anchored in the river. (*Monongahela Bridge Co.* v. *U. S.,* 216 U. S. 177; *Philadelphia Co.* v. *Stimson,* 223 U. S. 605; *Union Bridge Co.* v. *U. S.,* 204 U. S. 364; *U. S.* v. *Grimaud,* 220 U. S. 506; *Interstate Commerce Commission* v. *Goodrich Transit Co.,* 224 U. S. 194; *Parsons* v. *Parker,* 159 N. Y. 16; *Ouderkirk* v. *B. P. & P. Co.,* 199 N. Y. 366; *Ogden* v. *Alexander,* 140 N. Y. 356; *Ostrom* v. *Green,* 161 N. Y. 353; *Ostrander* v. *State of New York,* 192 N. Y. 415; *Callanan* v. *K., C. & L. C. R. R. Co.,* 199 N. Y. 268.) The findings that defendant's vessels were negligent required judgment for the plaintiff. (*The Virginia Ehrman,* 97 U. S. 309; *The Overbrook,* 149 Fed. Rep. 785; *The Oregon,* 158 U. S. 186; *The Henry O. Barrell,*

161 Fed. Rep. 481; *The Newburgh,* 130 Fed. Rep. 321; *The Director,* 180 Fed. Rep. 606; *The D. H. Miller,* 76 Fed. Rep. 877; *Inland & Seaboard Coasting Co.* v. *Tolston,* 139 U. S. 551; *The Dean Richmond,* 107 Fed. Rep. 1001.)

GRAY, J.   These three actions arose out of collisions by canal boats, in tow of the defendant's tugboats, with certain scows and other properties of the plaintiff in July and October, 1908. The plaintiff was under contract with the board of water supply of the city of New York to make boring tests in the bottom of the Hudson river; in order to determine at what place an aqueduct, or a tunnel, should be constructed for the conveyance of waters from the west side to the east side of the river, with which it was proposed to supply the city of New York. While carrying on these borings at points in the river opposite Storm King mountain, on three occasions in the night time, the plants established at certain of the borings, consisting in scows, platforms, drills, pipes, or other incidental properties, were struck by tows of canal boats and were, thereby, injured, or destroyed. The plaintiff charged in its complaints that these collisions were due to the negligent management of the masters of the defendant's steam tugs and that the defendant was responsible · for the damages sustained. The answer denied negligence and alleged that the plaintiff was unlawfully interfering with navigation upon the river. The referee, before whom the trial of the issues was had, decided in favor of the plaintiff, in each case; holding upon the facts found that the defendant was liable for the actual damages sustained and in action No. III, where the work upon the boring had to be abandoned, that it was liable, in addition, for the profits proved to have been lost upon the contract for the particular boring there in question. The judgments entered for the plaintiff upon the referee's decisions have been, unanimously, affirmed

by the Appellate Division, in the first judicial department, without opinion, and the defendant has, further, appealed to this court.

The unanimous affirmance below has conclusively disposed of all questions depending upon the facts found by the referee and I find no error of law, which would justify a reversal of the judgments in this court.

The referee has found, very fully, the facts and, briefly stated, this is the case as disclosed by them. The board of water supply of the state of New York, pursuant to statutory authority, was engaged in the construction of an aqueduct to supply the inhabitants of the city of New York with pure water, collected upon the west side of the Hudson river, and, as a part of that undertaking, contracted with the plaintiff to make test borings in the bed of the river. Prior to the making of the borings, the granting of an application by the board to drive pipe and to anchor vessels, near New Hamburg, was recommended by the chief of engineers of the United States army and permission was granted by the acting secretary of war on February 2d, 1906. Upon a subsequent application by the board to change the location of the borings to the part of the river opposite the mountain, known as Storm King, Colonel Lockwood of the corps of engineers of the United States army, located in New York city, wrote that "by the authority of the Secretary of War the permit was modified so as to permit the work to be carried on at Storm King." At a subsequent date, Colonel Knight of the engineer corps, at the same local office, wrote "granting permission to the Board * * * to anchor vessels at the Storm King line;" limiting simultaneous borings to four on the line and requiring that there should be left unobstructed two channels of specified depths and widths. At the time of the collisions, such channels existed and were amply sufficient for the passage of vessels and of tows. The defendant had been notified of, and was familiar with, the positions of the plaintiff's vessels at

each boring and, on the nights in question, the plaintiff, in conformity with the requirements of the officials of the United States Government, maintained white anchor lights upon each vessel.   In each case, the referee finds, with considerable particularity, all of the facts relating to the positions of borings; to the plaintiff's vessels and their situation at each boring; to the work in progress, with a description of the plant and machinery in use; to the operation of the defendant's tugboats in charge of tows descending the river and the way in which the collisions occurred with the borings and to the losses to the plaintiff, caused by the damaging, or destruction, of its vessels and other properties.   The referee finds that the masters of the tugboats were negligent and that the plaintiff was without contributing fault, and, therefore, directed judgment, in each case, for the amounts, which he had found to be the damages recoverable by the plaintiff.

The principal contention of the appellant, and, as I think, the only point we need consider, is that the plaintiff was a wrongdoer, whose borings constituted unlawful obstructions to the navigation of the Hudson river, and, therefore, that it could not recover the damages sustained, in the absence of a finding of willful fault on the part of the defendant.   Basing the argument on the provisions of the act of Congress of March 3d, 1899, it is insisted that the plaintiff had no lawful authority to maintain its drilling plants and scows in the river.   The referee found, at the request of the defendant, that the plaintiff had failed to show any lawful authority; that no act of Congress authorized the boring plants and that "the evidence does not show that the board   *   *   * had obtained from the secretary of war a lawful permit." He, also, refused to find that "the evidence fails to show that the plaintiff was lawfully engaged in the performance of the work." In his opinion, he expresses doubt upon the question of the plaintiff's authority, as

derived from the permits, and declines to decide it. He
considered that the right of the plaintiff to recover its
damages is not dependent upon the existence of an
authorized permit from the secretary of war and that it
rests upon the failure of the defendant's servants to use
reasonable and ordinary care in navigating the tugboats
on the occasions in question.

The action being at common law, while the judgment
might be sustained, in my opinion, upon the theory of
the referee, I, also, think that his findings as to the grant-
ing of the application of the board of water supply by
the secretary of war, upon the recommendation of the
chief of engineers, and as to the subsequent permits in
modification of the original permission, considered in con-
nection with the documents themselves, which evidence
the action of the Federal officials, do, sufficiently, estab-
lish that the board had authority to make the test bor-
ings, in question, and show that the plaintiff was lawfully
at work in the river. Section 9 of the act of Congress of
March 3d, 1899, makes it unlawful "to construct
any bridge, dam, dike, or causeway over, or in, any
* * * navigable river, or other navigable water,
of the United States, until the consent of Congress
* * * shall have been obtained and * * * plans
* * * submitted," etc. Section 10 provides "That
the creation of any obstruction, not affirmatively author-
ized by Congress, to the navigable capacity of any of
the waters of the United States is hereby prohibited;
and it shall not be lawful to build or commence the
building of any wharf, pier, dolphin, boom, weir, break-
water, bulkhead, jetty, or other structures in any * * *
navigable river, or other water of the United States,
* * * except on plans recommended by the chief of
engineers and authorized by the secretary of war; and it
shall not be lawful to excavate or fill, or in any manner
to alter or modify the course, location, condition or
capacity * * * of the channel of any navigable water

of the United States, unless the work has been recommended by the chief of engineers and authorized by the secretary of war prior to beginning the same." Section 9 has no application; because the work in question is not of the description of the structures specified in the section. The two sections cover the whole subject of structures to be erected in, or over, navigable waters and provide when the structures described may, or may not, be erected without the previous consent of Congress. If the case is one which called for permission from the Federal authorities, it, rather, falls within those provisions of section 10, which leave the doing of any work modifying the capacity of channels in navigable waters to the recommendation of the chief of engineers and the authorization, thereupon, of the secretary of war. The prohibition against "the creation of any obstruction, not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States" does not apply to the case; inasmuch as, within the just and reasonable construction to be given to the language, the plaintiff was not engaged in the "creation" of any obstruction to the navigability of the river. The intent of the statute was against the construction of structures of a more, or less, permanent nature and of the description of those particularized, unless authorized as prescribed. The plaintiff was executing a contract to test by borings the nature of the bed of the river, through which the construction of the aqueduct, or tunnel, was contemplated, and the plant used for the purpose constituted but a temporary obstruction of the river, which, upon execution of its purpose, would be removed. The intendment of the statute should not be so strictly construed as to be unfavorable to the temporary use of navigable channels in furtherance of public improvements within a state; when the permission of the proper officials of the United States government, generally, has been obtained. This permission appears to have been applied for by the board of

water supply and I think it was, in fact, granted. If that be true, then, the work in progress in the river waters was not illegal, nor was it a nuisance, however the navigable capacity of the river may, for the time, have been interfered with. Assuming that, by a proper construction of the act of Congress the case falls under the provisions of section 10, as, for instance, an alteration, or a modification, of the course, or capacity, of the channel of the Hudson river, the proof is that, by an instrument in writing, in February, 1906, permission was "granted to the board of water supply of the city of New York, in accordance with the recommendation of the chief of engineers, U. S. Army, to drive piles and anchor boats, as specified in the application, in the Hudson river near New Hamburgh, N. Y.," etc. Conditions were attached to the permission and the work was to "be subject to the supervision and approval of the local officer of the corps of engineers, U. S. Army, whose address is Army Building, New York City." This instrument was signed by the acting secretary of war. In March, 1907, by a letter to the board, from the United States engineers' office, in the Army Building, in the city of New York, "in response to its application and by authority of the secretary of war," the permit to drive piles and to anchor boats in the Hudson river "*in connection with making borings,*" was "modified," so that "*on the Storm King line* work shall not be in progress simultaneously on more than three borings, except within 800 feet of the east shore, where additional borings may be made simultaneously," etc. A clause regulated the clear space to be maintained in the river. As bearing upon the action of the war department in granting permission to make borings in the river, in connection with the aqueduct, mention should be made that in May, 1907, permission was granted by the secretary of war, in accordance with the recommendation of the chief of engineers, U. S. army, to dump along both shores, in the vicinity of Cornwall and Storm King sta-

tion, "*spoil from tunnel shafts to be sunk in connection with a water supply to be furnished from the Catskill Mountains,*" etc.   In February, 1908, under indorsement by the acting secretary of war, the "local officer of the corps of engineers," in New York city, to whom the secretary of war had referred the supervision of work in his permit, in response to an application of the board, granted permission " to drive piles and anchor boats, as requested, and to make borings," with conditions; among which were that " on the Storm King line" simultaneous borings were restricted to four, that two channels should be left unobstructed and that obstructions should be removed as soon as each boring was finished.   Corroboration of the authorization relied upon may be found in the contents of a "memorandum of action by the (War) Department in the matter of applications by the Board of Water Supply for permission to make borings in connection with location of Catskill aqueduct; " which was furnished to the defendant and used upon the trial.   It seems to me quite clear that the work of making test borings in the river bottom, for the purpose of a tunnel construction, was recognized and sufficiently acted upon by the war department in approval of the plans, and technical and unsubstantial objections to the manner of granting the permission to occupy the channels, or to the form of the permits, should be disregarded.

I have reached the conclusion, upon the question discussed, that no defense was made out of an unlawful obstruction of the channel of the Hudson river and, as no other question requires consideration, I advise that the judgments appealed from be affirmed.

CULLEN, Ch. J., WILLARD BARTLETT, CUDDEBACK and HOGAN, JJ., concur; WERNER, J., absent; MILLER, J., not sitting.

Judgments affirmed, with costs.