HENRY E. FOX CONSTRUCTION CO., INC., Appellant, *v.* DAILEY'S TOWING LINE, INC., Respondent.

First Department, December 7, 1917.

Appeal — consideration of evidence on review of nonsuit — negligence — collision of barge drawn by tug with motor boat engaged in repairing water main on bed of river — liability of owner of tug — proximate cause — failure of motor boat to comply with pilotage rules — consequential damages.

On the review of a nonsuit the evidence cannot be weighed by the court, and, therefore, the plaintiff is entitled to the most favorable inferences that may legitimately be drawn from the evidence.

A construction company, under contract with the city of New York to repair a water main in the bed of the East river, hired a motor boat to take the material and divers to the place in question where they anchored in navigable waters, but not in the channel or fairway, about sixty feet from the dock, on the north shore, broadside to the current. Said boat had a red flag flying from the bow and another from the stern which could be seen from all directions and on the bow was a diver's pump about four feet high and two feet wide which two helpers were turning and there was also a block and fall on the deck. While the divers from said boat were at work, it being perfectly light, a tug made a turn into the dock in such a manner that the last barge in its tow was carried up the river by the tide and collided with the bow of the motor boat. In an action by said contractor against the owner of the tug to recover damages resulting from the collision consisting of the loss of and injury to material being used by the divers,

*Held*, that it was error to hold that the violation of the government pilotage rules requiring the display of signals a certain distance above the decks of vessels engaged in marine construction, if they were applicable, created

594 Fox Const. Co., Inc., *v.* Dailey's Towing Line, Inc.

First Department, December, 1917. [Vol. 180.

a presumption that the plaintiff was negligent and, therefore, not entitled to recover.

A violation of a statute or ordinance is evidence from which the jury may infer negligence, but negligence is not to be inferable therefrom as matter of law.

Even if the pilotage rules apply to the boat in question, the object of said rules was to protect the submarine structure and failure to comply therewith was not the proximate cause of the collision and did not afford the defendant immunity from the consequences of negligently running into the motor boat.

The damages claimed by the plaintiff directly and immediately resulted from the collision, and if that was due to the negligence of the defendant it is liable regardless of whether or not it could or should have foreseen that the motor boat was engaged in submarine work or that there was material suspended from her.

APPEAL by the plaintiff, Henry E. Fox Construction Co., Inc., from an order and determination of the Appellate Term of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 30th day of April, 1917, affirming a judgment of the Municipal Court, City of New York, Borough of Manhattan, Fifth District, and also from the judgment of the Municipal Court so affirmed.

*Samuel F. Frank,* for the appellant.

*Mark Ash,* for the respondent.

LAUGHLIN, J.:

The trial was before the court and a jury. The plaintiff was nonsuited. The question presented by the appeal is, therefore, whether the evidence adduced in behalf of plaintiff was sufficient to require the submission of the case to the jury. Under a well-settled rule which requires no citation of authorities the evidence cannot be weighed by the court on review of a nonsuit for that is the function of the jury, and, therefore, the plaintiff is entitled to the most favorable inferences that may legitimately be drawn from the evidence.

The plaintiff prior to the 6th day of December, 1916, pursuant to a contract with the city of New York had laid a twelve-inch water main from the foot of One Hundred and Fortieth street, borough of Manhattan, New York, along the bed of the East river to North Brother island, which was the vicinity of a well-known pipe crossing of which a notice was

posted on the shore of North Brother island opposite this point. One of the joints of the pipe had split causing a leak which it was incumbent on plaintiff to repair and it decided to do so by clamping a " sleeve " around the joint. The sleeve consisted of two fitted pieces of iron fifty inches long and twenty-four inches in width shaped to fit around the pipe, one above and one below, and it was necessary to lower them into the water to a depth of about sixty-seven feet and to have them pushed into position, clamped and caulked by divers working on the bottom of the river. In order to do this work the plaintiff hired the *Alvin*, a motor boat commanded by Captain Meyer, for ten dollars per day to take the sleeve and the divers and anchor over the point where the pipe leaked so that the parts of the sleeve could be lowered and the divers could descend. At about five o'clock on the afternoon of said sixth day of December, when there was a flood tide, the *Alvin* was anchored over the pipe at a point about sixty feet from the dock on the north shore, broadside to the current, her stern secured to the dock by two ropes running from the stern and fastened to the dock by cleats, and her bow was held in position by an anchor attached to a chain and thrown forward onto the bed of the river. According to the evidence it was still perfectly light and there was a red flag flying from the bow and another from the stern of the *Alvin* and they could be seen from all directions; and on the bow of the *Alvin* was a diver's pump about four feet high and two feet wide which two helpers were turning, and there was also on the deck a block and fall. The *Alvin* was only a ten-ton boat and thirty-eight feet in length and her beam was thirteen feet. One section of the sleeve had been lowered to a position under the pipe but was still attached to the stern of the *Alvin* by the rope by which it had been lowered. The upper section had been lowered from the motor boat by a rope and a diver had submerged to guide it, by signals, into place. At this time the defendant's tug, the *Dr. George J. Moser,* came up the river towing four barges of the street cleaning department. The street cleaning department's dock for which the tug and barges were bound was at One Hundred and Thirty-eighth street. The tug made the turn into the dock at such a point and in such a manner that the last barge in its tow was carried

First Department, December, 1917. [Vol. 180.

up the river by the tide and driven and pulled into collision with the bow of the *Alvin*, with such force as to break a piece weighing from four to ten pounds out of her iron keel and to drive her back against the dock and drag the lower sleeve out of position, and it was lost and its lead lining was smashed. The plaintiff was obliged to hire divers to find the lost section and to have it repaired and to replace it in position. This involved an expense of over $1,000, to recover which it brought this action on the ground that the damages were caused by the negligence of the defendant.

The *Alvin* had been anchored at this point all day. It was conceded that she was anchored in navigable waters of the river, but not in the channel or a fairway.

The plaintiff's contract with the city required that the work should be performed in accordance with the provisions of a permit granted by the War Department on the 7th day of February, 1913. The permit authorized the laying of the water main and provided, among other things, that there should be no unreasonable interference with navigation while the work was in progress and that the grantee thereof should be liable for all injury to vessels; that in order to reduce the danger of such injury the grantee should so far as required by the local United States engineer " erect suitable signboards or other warning signals to notify vessels of the work either in progress or after completion." The pilotage rules issued by the United States Department of Commerce and Labor provided that the creation of any obstruction not affirmatively authorized by law to the navigable capacity of any waters in respect to which the United States has jurisdiction is prohibited and that no vessel should occupy a permanent berth in the anchorages except as provided for in the anchorage rules and regulations and that " vessels which are moored or anchored, and engaged in laying pipe or operating on submarine construction or excavation shall display by day, not less than fifteen feet above the decks, where they can best be seen from all directions, two balls not less than two feet in diameter, in a vertical line not less than three feet and not more than six feet apart, the upper ball to be painted in alternate black and white vertical stripes six inches wide, and the lower ball to be painted a solid bright

Fox Const. Co., Inc., *v.* Dailey's Towing Line, Inc.   597

App. Div.]          First Department, December, 1917.

red.   By night they shall display three red lights, carried in a vertical line not less than three feet nor more than six feet apart and not less than fifteen feet above the deck, and in such position as may best be seen from all directions.   All the lights required by these special rules for dredges, wrecking boats, lighters, etc., shall be of such size and character as to be visible on a dark night with a clear atmosphere for a distance of at least two miles.''   The evidence shows that this was not anchorage ground, and that no signboards or warning signals, other than as stated, were erected, and that these provisions of the pilotage rules were not observed by the *Alvin*.   It is claimed, however, by the appellant that they were not applicable and the testimony of the captain and owner of the *Alvin* is to the effect that the motor boat was so small that balls could not be displayed fifteen feet above the deck as required by the pilotage rules and could not be displayed more than twelve feet above the deck.

The trial court dismissed the complaint on the ground that the defendant could not have *foreseen* that a collision with the *Alvin* would cause the damages for which a recovery is sought inasmuch as there was no signal as required by the pilotage rules indicating that the *Alvin* was engaged in submarine work and it could not have been foreseen that such damages would flow from a collision with the *Alvin*.   The Appellate Term affirmed without opinion and denied a motion for a reargument or leave to appeal; but thereafter published an opinion stating that the affirmance was on the ground that the " plaintiff had failed to furnish sufficient evidence to overcome the presumption of negligence arising from the conceded failure to comply with the rules and regulations of the Pilot Law.''

The jury might have found and doubtless would have found that the collision was caused by the negligence of the master of the tug towing the barges.   The learned Appellate Term was in error in holding that the violation of the pilotage rules, if they were applicable, created a presumption that plaintiff was negligent and, therefore, not entitled to recover. That is not the rule in this jurisdiction where the common law with respect to negligence and contributory negligence as administered here governs, nor is it the rule in the Federal

court. (See *Phœnix Const. Co.* v. *Cornell Steamboat Co.*, 210 N. Y. 113; affd., *sub nom. Cornell Steamboat Co.* v. *Phœnix Const. Co.*, 233 U. S. 593; *Percival* v. *Hickey*, 18 Johns. 257; *Schoonmaker* v. *Gilmore*, 102 U. S. 118.) A violation of a statute or ordinance is evidence from which the jury *may infer negligence,* but negligence is not to be *inferable* therefrom as matter of law. (*Hoffman* v. *Union Ferry Co.*, 47 N. Y. 176; 68 id. 385; *Amberg* v. *Kinley*, 214 id. 536; *Fluker* v. *Ziegele Brewing Co.*, 201 id. 40; *MacMahon* v. *Brooklyn & N. Y. Ferry Co.*, 10 App. Div. 380; *Silliman* v. *Lewis,* 49 N. Y. 383.)

It is not entirely clear that the pilotage rule applied to this launch in the circumstances or to this work (See *Lambert* v. *Staten Island R. R. Co.*, 70 N. Y. 109; *Matter of Rouss,* 221 id. 91), but if it did the object of the rule was to protect the submarine structure and failure to comply therewith was not the proximate cause of the collision and did not afford the defendant immunity from the consequences of negligently running into the *Alvin,* of the presence of which the jury would have had a right to find it had ample notice both from its position in the river plainly indicating that it was at anchor and from the flags upon it and the divers' pump, all of which the jury might have found were or should have been seen by the captain of the tug who had some 1,700 feet of navigable water in which to maneuver. (See *Hoffman* v. *Union Ferry Co., supra; Phœnix Const. Co.* v. *Cornell Steamboat Co., supra; The Lucille,* 169 Fed. Rep. 719; *New York Central No. 18,* 230 id. 299; *Austin* v. *New Jersey Steamboat Co.*, 43 N. Y. 75; *The Pocahontas,* 235 Fed. Rep. 116; *The Wrestler,* 232 id. 448, 450; *The Yucatan,* 226 id. 437.)

It follows, therefore, that the dismissal of the complaint cannot be sustained upon the theory that the plaintiff was guilty of negligence as matter of law in failing to comply with the pilotage rules. It is contended, however, that the damages for which a recovery is here sought could not have been *foreseen* and that, therefore, the defendant is not liable therefor. The damages directly and immediately resulted from the collision, and if that was due to the negligence of the defendant I think it is liable regardless of whether or not it could or should have foreseen that the *Alvin* was engaged in submarine work or that there was material suspended

from her.   (*Lowery* v. *Manhattan R. Co.*, 99 N. Y. 158; *Eten*
v. *Luyster*, 60 id. 260; *Ehrgott* v. *Mayor, etc.*, 96 id. 264;
*Smith* v. *London, etc., Ry. Co.*, L. R. 6 C. P. 14; Id. 5 C. P.
98; *Hammill* v. *Pennsylvania R. R. Co.*, 56 N. J. L. 370; *Bowas*
v. *Pioneer Tow Line*, 2 Saw. 21; Fed. Cas. No. 1,713; Suth.
Dam. [4th ed.] § 54.)

It follows that the determination of the Appellate Term
and the judgment of the Municipal Court should be reversed
and a new trial granted, with costs in all courts to appellant to
abide the event.

CLARKE, P. J., DOWLING, PAGE and SHEARN, JJ., concurred.

Determination appealed from and judgment reversed and
a new trial ordered, with costs in all courts to the appellant
to abide the event.